WO                    NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Maggie Agahi, *et al.*, | No. CV-15-01640-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Ramin Khorrami, *et al.*, | |
| Defendants. | |

At issue is Defendant Ramin Khorrami's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4, MTD), to which Plaintiffs Maggie and Farshad Agahi filed a Response (Doc. 5), and Defendant filed a Reply (Doc. 6). For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**I.     BACKGROUND**

In considering Defendant's Motion to Dismiss, the Court construes as true Plaintiffs' allegations in the Complaint. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). Plaintiffs Maggie Agahi and her husband, Farshad Agahi, M.D., were residents of Maricopa County, Arizona, at the time of the following events. (Doc. 1-1 at 6-15, Compl. ¶ 1.) In May 2012, Ms. Agahi was in Los Angeles, California for a post-operative visit after a medical procedure. (Compl. ¶ 11.) While there, she met Defendant Ramin Khorrami at Urth Café. (Compl. ¶ 11; Doc. 4-1, Khorrami Decl. ¶ 4.) Shortly after meeting, they started a consensual relationship. (Compl. ¶¶ 11-12.) Mr. Khorrami knew that Ms. Agahi was living with her husband in

Phoenix, Arizona, while they were dating. (Doc. 5-1, Agahi Aff. ¶¶ 3, 5.) Ms. Agahi told Mr. Khorrami that she was separated from her husband and was in the process of filing for divorce. (Khorrami Decl. ¶ 4.)

Over the course of their year-and-a-half-long relationship, Ms. Agahi went to Los Angeles to visit Mr. Khorrami about 30 times, including 4-5 times in July and August 2012, 4-5 times in September and October 2012, 1-2 times in November 2012, 2-3 times every month from February 2013 to June 2013, 2-3 times in September and October 2013, and 1-2 times in November 2013. (Khorrami Decl. ¶¶ 4-8.) They also traveled to Las Vegas, Nevada together in September 2012. (Khorrami Decl. ¶ 5.) In late 2013, their relationship ended. (Khorrami Decl. ¶ 10.)

As their relationship progressed, Mr. Khorrami began to use cocaine and insisted that Ms. Agahi use cocaine with him. (Compl. ¶ 13.) Mr. Khorrami would often attack Ms. Agahi violently when he used cocaine. (Compl. ¶ 13.) Mr. Khorrami also threatened Ms. Agahi by telling her that he had access to her telephone records and that he had hired a private investigator to watch her. (Compl. ¶ 14.) In June 2013, Mr. Khorrami demanded $40,000 from Ms. Agahi and told her if she failed to pay, he would contact her husband, his family members, their friends, and members of the Baha'i community to spread false and negative stories about Ms. Agahi and her family. (Compl. ¶ 15.) He threatened to ruin the Agahis' reputations within their community in Phoenix. (Compl. ¶ 15; Agahi Aff. ¶ 12.) Ms. Agahi ultimately paid Mr. Khorrami $30,000 out of fear he would follow through on his threats. (Compl. ¶ 18.)

Mr. Khorrami became more physically and emotionally violent each time Ms. Agahi went to visit him in Los Angeles. (Compl. ¶ 16.) Mr. Khorrami forced Ms. Agahi to come to Los Angeles to perform sexual actions under duress, coercion, and threats of harm. (Compl. ¶ 16.) During this time, Mr. Khorrami beat Ms. Agahi so badly that he fractured her nose. (Compl. ¶ 16.) Ms. Agahi claims that Mr. Khorrami attacked her daily by calling her on the telephone, sending her text messages, and communicating via FaceTime. (Compl. ¶ 17.)

Mr. Khorrami is a resident of Los Angeles, California and has lived there since 1984. (Khorrami Decl. ¶ 2.) Mr. Khorrami never visited Arizona during his relationship with Ms. Agahi, and he has not visited Arizona at any time in the last ten years. (Khorrami Decl. ¶¶ 11, 14.) Mr. Khorrami does not have a business, bank account, or property in Arizona, and he does not pay taxes in Arizona. (Khorrami Decl. ¶¶ 15-18.)

During their relationship, Mr. Khorrami would often call and receive calls from Ms. Agahi on her cellular phone, which has an Arizona area code. (Agahi Aff. ¶¶ 6-9.) Mr. Khorrami knew that Ms. Agahi's family lived in Phoenix, Arizona. (Agahi Aff. ¶ 11.) Ms. Agahi was a successful real estate agent in Phoenix, Arizona, but can no longer work and earn money because of the physical, emotional and verbal abuse inflicted on her by Mr. Khorrami. (Agahi Aff. ¶¶ 15, 17-18.) Due to the harm Mr. Khorrami caused, Ms. Agahi has been prescribed medications in Arizona. (Agahi Aff. ¶ 19.) Ms. Agahi currently receives medical and psychological treatment that will continue for the foreseeable future. (Agahi Aff. ¶¶ 18, 20.)

On September 21, 2015, almost two years after Ms. Agahi and Mr. Khorrami's relationship ended, Dr. and Ms. Agahi filed a Complaint in Arizona state court alleging five causes of action against Mr. Khorrami:[1] (1) theft by extortion in violation of A.R.S. § 13-1804, (2) intentional infliction of emotional distress, (3) negligence, (4) negligence *per se*, and (5) loss of consortium. (Compl. ¶¶ 19-42.) The Agahis seek punitive damages for the harm they allegedly suffered from Mr. Khorrami's intentional, reckless, willful and wanton, negligent and/or grossly negligent actions. (Compl. ¶¶ 43-46.) Mr. Khorrami removed the case to this Court based on diversity jurisdiction and now moves to dismiss for lack of personal jurisdiction. (MTD at 1.)

## II. LEGAL STANDARD

A federal court must have jurisdiction over the parties to adjudicate a matter. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party

---

[1] Plaintiffs have also named Mr. Khorrami's wife as Defendant in order to reach any marital property.

- 3 -

invoking the jurisdiction of the federal court has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Prior to trial, the defendant may move to dismiss the complaint for lack of personal jurisdiction. *Data Disc, Inc.* 557 F.2d at 1285; Fed. R. Civ. P. 12(b)(2). When the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

There is no statutory method for resolving the question of personal jurisdiction, so "the mode of determination is left to the trial court." *Data Disc,* 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where a court determines that it will receive motions and supporting affidavits to resolve the question of personal jurisdiction, the plaintiff must "only make a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met its burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish jurisdiction over the defendant, the plaintiff must show that (1) the state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Under Arizona's long-arm statute, the exercise of personal jurisdiction is allowed to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Arizona Rule of Civil Procedure 4.2(a), "Arizona

will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). A court in Arizona may exercise personal jurisdiction over a nonresident defendant when doing so comports with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Constitutional requirements of due process require that the nonresident defendant have certain "minimum contacts" with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. A court may assert general or specific jurisdiction over the nonresident defendant. *Cybersell*, 130 F.3d at 416. General jurisdiction exists where the nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc*, 557 F.2d at 1287.[2] A court may exercise specific jurisdiction where the defendant's specific contacts have a substantial connection and give rise to the claim in question. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).

Here, the Agahis contend that the Court has specific jurisdiction over Mr. Khorrami. Whether this Court may exercise specific jurisdiction turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit Court of Appeals uses the following approach to determine whether the court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which

---

[2] The facts set forth do not support a finding that this Court has general jurisdiction over Mr. Khorrami, nor do Plaintiffs so argue.

arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

### III. ANALYSIS

Mr. Khorrami contends that the Agahis fail to satisfy the first two requirements of the Ninth Circuit's test for specific jurisdiction and that he has shown that an exercise of jurisdiction in Arizona would be unreasonable. (MTD at 5, 6.) Here, the Court need analyze only the first element of the Ninth Circuit's framework to determine whether personal jurisdiction has been established.

To meet the first element of the Ninth Circuit's three part test—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful direction analysis is most commonly applied in cases involving tortious conduct. *Mavrix Photo, Inc.*, 647 F.3d at 1228. Because theft by extortion, intentional infliction of emotional distress, negligence, negligence *per se*, and loss of consortium are all "tort-like cause[s] of action," purposeful direction is the proper analytical framework. *Id.*

To determine whether the defendant's actions constitute purposeful direction, courts apply the "effects" test that was developed in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The effects test requires that "the defendant allegedly must have

(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, at 1206.

The first part of the effects test requires courts to consider "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Id.* at 1210. Here, whether Plaintiff has sufficiently alleged that Defendant committed an intentional act is not at issue. According to the Complaint, Defendant forced Plaintiff Maggie Agahi to use cocaine and other drugs, became violent and physically attacked her, controlled her using threats of violence and demands, threatened to ruin Plaintiff's reputation if she did not pay Defendant $40,000, and forced her to come to Los Angeles to perform sexual acts under duress and coercion. (Compl. ¶¶ 13-18.) Plaintiff has sufficiently alleged Defendant acted intentionally, meeting the first element.

The second part of the effects test requires that the defendant's intentional acts be expressly aimed at the forum state. Here, Defendant's actions were expressly aimed at Plaintiff, not Arizona. Plaintiff contends that because she is a resident of Arizona, Defendant's actions were indirectly aimed at Arizona. The fact that Defendant's actions were expressly aimed at Plaintiff while she maintained residency in Arizona is not sufficient. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

Plaintiff attempts to show Defendant's acts were expressly aimed at Arizona through her allegations that Defendant called her and text-messaged her on her cell phone, which has an Arizona area code, that Defendant knew her family lived in Arizona, and that Defendant tried to ruin her reputation in Arizona. In *Picot v. Weston*, the Ninth Circuit held that a defendant's actions are not aimed at the forum state when the plaintiff's injuries are "entirely personal to him and would follow him wherever he might choose to live or travel." 780 F.3d 1206, 1215 (9th Cir. 2015). There, the defendant even traveled to the forum state and negotiated contracts on the phone with someone in the

forum state, but the defendant conducted none of the alleged tortious conduct in the forum state. *Id.* at 1213.

Applying the principles from *Walden* and *Picot*, the Court notes that Plaintiff's alleged injuries were a result of Defendant's conduct aimed expressly at her, not at Arizona. Plaintiff's injuries would "follow [her] wherever [she] may choose to live or travel." *Id.* at 1215. The fact that Defendant called Plaintiff on her mobile phone, which has an Arizona area code, does not show his acts were aimed at Arizona. The fact that Defendant knows that Plaintiff's family lives in Arizona still only connects him to Plaintiff, not to Arizona. Defendant never came to Arizona during their year-and-a-half-long relationship, and Plaintiff's residence in Arizona is not enough to show Defendant's actions were expressly aimed at Arizona.

Plaintiff also contends that Defendant's threat to ruin her reputation in Arizona is enough to connect him to Arizona. In *Calder v. Jones*, the Supreme Court held that personal jurisdiction was established where California was the focal point of a news story and of the harm suffered after the petitioners published the allegedly libelous story about the respondent. 465 U.S. at 789. Here, Defendant's threats to Plaintiff's reputation in Arizona—which were never consummated—do not rise to the same level. Plaintiff has not demonstrated any possible actions that may have connected Defendant to Arizona. In sum, Plaintiff has not provided sufficient facts for the Court to find that the second element of the *Calder* effects test has been met.

The third part of the effects test requires that the intentional act must cause harm the defendant knows is likely to be suffered in the forum state. Plaintiff argues that she has suffered harm from Defendant's actions because she can no longer work and make money as a real estate agent in Arizona. Because of Defendant's alleged abuse, Plaintiff is on medication and seeking medical care in Arizona. While Plaintiff alleges she suffered harm, she has not shown how the harm she suffered connects Defendant's actions to Arizona. *See Walden*, 134 S. Ct. at 1124. Plaintiff thus also fails to meet the third element of the *Calder* effects test.

Because Plaintiff has not met the first element of the Ninth Circuit's three-part personal jurisdiction framework by failing to show that Defendant's actions were purposefully directed at Arizona, the Court need not analyze the second and third factors of the test. The Court does not have personal jurisdiction over Defendant in this matter and must therefore dismiss this case.

## IV. CONCLUSION

Plaintiffs Maggie and Farshad Agahi did not meet their burden of showing that Defendant Ramin Khorrami purposefully directed his activities at Arizona under the *Calder* effects test.

IT IS THEREFORE ORDERED granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4).

IT IS FURTHER ORDERED directing the Clerk of the Court to enter final judgment accordingly and close this case.

Dated this 9th day of February, 2016.

Honorable John J. Tuchi
United States District Judge